I agree with the majority finding that plaintiff has sustained a compensable occupational disease, bladder cancer, in the course and scope of his employment. I disagree, however, with the majority's finding as to the liable employer/carrier.
First, I agree with the majority that the results of the IARC study, EPA study, and other studies which identify diesel exhaust to be a carcinogen capable of producing bladder cancer are sufficiently scientifically reliable to be admissible in evidence and form the basis for expert testimony that plaintiff's exposure to diesel exhaust in his employment was a cause of his bladder cancer. See Young v. HickoryBusiness Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000), citing, Dean v.Carolina Coach Co., 287 N.C. 515, 522, 215 S.E.2d 89, 94 (1975); Cummingsv. Burroughs Wellcome Co., 130 N.C. App. 88. 91, 502 S.E.2d 26, 29,disc. rev. denied, 349 N.C. 355, 517 S.E.2d 890 (1998); Ballenger v.Burris Indus., 66 N.C. App. 556, 567, 311 S.E.2d 881, 887, disc. rev.denied, 310 N.C. 743, 315 S.E.2d 700 (1984); see also, Daubert v. MerrellDow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993); Tomlinv. Hoechst Celanese, I.C. No. 834255 (2002); Deaton v. Wal-Mart, I.C. No. 224509 (2002). Therefore, the testimony of Drs. Darcy and Tannenbaum are based on accepted scientific principle and are admissible in this case. Further, the greater weight of the competent evidence supports that plaintiff's claim for bladder cancer is compensable.
I disagree with the majority in their determination of the employer that is liable for the occupational disease. The issue of the liable employer/carrier for plaintiff's occupational disease of bladder cancer is governed by Section 97-57 of the Act which states:
 "In any case where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, that was on the risk when the employee was so last exposed under such employer, shall be liable."
In order to answer this question, particularly under the circumstances and evidence of this case, it is important to determine when plaintiff contracted the occupational disease of bladder cancer.
Plaintiff was officially diagnosed with bladder cancer in November 1997 based on a urine cystoscopy performed in August 1997. Under the evidence presented in this case, however, neither August 1997 nor November 1997 are relevant to the question of when plaintiff's exposure to diesel exhaust produced his bladder cancer. On the issue of gestation of the cancer and effect of continued exposure on plaintiff's cancer, Dr. Robertson testified:
 "bladder cancer typically has a natural history of between six months to one to two years prior to clinical diagnosis of the cancer." [Deposition of Cary N. Robertson at p. 19]
 "If one believes that diesel fumes are strongly causative for bladder cancer, it may be presumed that the incipient event for the development of bladder cancer occurred sometime before November `97. I do not believe strongly that any of the premalignant or carcinogenic events that occurred, whatever they may be, for this gentlemen's bladder cancer primarily between the time of July or June `97 and November `97. I believe that these malignant and carcinogenic events, whatever they might be, occurred over a long period of time of at least three to five years." [Deposition of Cary N. Robertson at p. 20-21]
Dr. Robertson also explained that once exposure to a chemical has produced the DNA damage and produced the genetic mutations to produce the cancer further exposure to the chemicals has not been shown to accelerate the growth of the cancer; once the carcinogen promotes the mutation, the cancers are self-starters that do not require further exposure to spread the disease. [Deposition of Cary N. Robertson at p. 33-34]
The testimony of Dr. Tannenbaum on this issue is consistent with the evidence presented by Dr. Robertson:
 "Q. Does continued exposure, now that he suffers from bladder cancer — is that — excuse me — continued exposure to diesel exhaust — is that in any way causing his bladder cancer to worsen or be aggravated?
 No. I think his damage is done. [Deposition of Sigmund Ian Tannenbaum, M.D. at p. 35]
 Do you have an opinion as to whether the continued exposure to diesel exhaust beyond the date of these conclusions would place him at a greater risk or make it more likely that his precancerous lesions advanced into a cancerous state?
 It would seem logical that if you continued to have — be exposed to a carcinogenic agent, that you would be more likely to develop the cancer, but that's not necessary. Once you have a precancerous lesion, it may develop on its own without any more stimulation.
 Do you have an opinion as to whether the continued exposure would make it more or less likely that it would advance to a cancerous state?
In this particular case?
Yes, sir.
 A. I don't know — I don't know how to answer that question. [Deposition of Sigmund Ian Tannenbaum, M.D. at p. 35]
Dr. Tannenbaum further explained that plaintiff's cancer occurred some time between the first cystoscope in 1995 and the positive cystoscope in 1997. He further explained that plaintiff's "symptoms, by history, began in 1995, and that it would be a fair assessment to say that [his] cancer could have started at that time."
Based on the medical evidence in this case, as illustrated above, plaintiff had the bladder cancer before he went to work for UPS and continued exposure to diesel exhaust during this employment would not accelerate or otherwise change this cancer. I, therefore, disagree with the majority's conclusion that continued exposure up to November 1997 contributed to plaintiff's bladder cancer. First, the November diagnosis was based on an August 1997 urine cystoscope, and thus the cancer was present in August although the study was not examined until November. Second, the evidence is that this cancer existed at least six months before it was found with the cystoscope, and thereby pre-existed plaintiff's employment with UPS. And finally, once the mutation permitting the cancerous changes occurs, further exposure to the carcinogen does not accelerate the disease. Therefore, I would find that plaintiff developed bladder cancer sometime between 1995 and February 1997, and that his last injurious exposure was during his employment with Roadway Express during this period.
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER